Robert T. Hickey, Appellant, *v.* Board of School Directors of Penn Manor School District, Appellee.

Argued September 9, 1974, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILK-
INSON, JR., MENCER, ROGERS and BLATT.

*Gerald E. Ruth,* for appellant.

*Christopher W. Mattson,* with him *Barley, Snyder, Cooper & Mueller,* for appellee.

OPINION BY JUDGE BLATT, November 26, 1974:

On June 23, 1970 Robert T. Hickey entered into a "temporary professional employe's contract"[1] with the Penn Manor School District (School District) and he taught art at the Penn Manor Senior High School during the 1970-71 school year. In the course of that year he received seven unsatisfactory ratings from his department head, Mrs. Thelma C. Rutherford, who observed his classroom performance firsthand prior to each rating. Because of these ratings, his contract with the School District was terminated as of June 30, 1971.[2]

Mr. Hickey requested a hearing before the Board of Directors (Board) of the School District, which was scheduled for August 18, 1971. After a procedural dispute as to which party had the burden of proof, however, neither party offered any evidence at that hearing. Mr. Hickey then brought an action in mandamus in the Court of Common Pleas of Lancaster County, alleging his right to a hearing under the

---

[1] "The term 'temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal." Public School Code of 1949, Act of March 10, 1949, P. L. 30, §1101, *as amended,* 24 P.S. §11-1101(3).

[2] The appropriate procedures for dismissal of a temporary professional employe are set forth in Sections 1108 and 1123 of the Public School Code of 1949, 24 P.S. §§11-1108, 11-1123 (Supp. 1974-1975). These sections explain the function of the rating system and establish it as the proper standard for evaluation of teachers.

Local Agency Law, Act of Dec. 2, 1968, P. L. 1133, 53 P.S. §11301 et seq. That court dismissed preliminary objections filed by the Board and a hearing was subsequently held before the Board on July 12, 1972. Both Mr. Hickey and the School District presented testimony at that hearing, and, by a resolution adopted on October 8, 1972, the Board ordered his employment contract to be terminated. He appealed to the Court of Common Pleas, which then remanded the record to the Board to make findings of fact and to state the reasons upon which it based its dismissal action. The Board then listed nine findings of fact and two reasons for its dismissal action, and Mr. Hickey once more appealed to the Court of Common Pleas which, on January 18, 1974, affirmed the adjudication of the Board. An appeal to this Court has followed.

When a complete record of the proceedings before the local agency has been made and no additional testimony has been taken before the court below, we are required to affirm the action of the local agency unless we find that it was in violation of the constitutional rights of the appellant, or that the agency manifestly abused its discretion or committed an error of law, or that any finding of fact made by the agency and necessary to sustain its adjudication is not supported by substantial evidence. *Acitelli v. Westmont Hilltop School District*, 15 Pa. Commonwealth Ct. 214, 325 A. 2d 490 (1974).

Mr. Hickey argues first that the Board's findings of fact and its reasons for its adjudication are not supported by the record. We must hold otherwise. The Board's findings were that Mr. Hickey's instruction was below the students' grade level, that his lessons were not taught in accordance with plans, that his classroom time was poorly budgeted and that his presentation of lessons was confused. It also found

that he was unwilling to make the necessary adjustments in his teaching methods as requested by his supervisors and that he was reluctant to accept their constructive criticism. These findings were well supported in the record, primarily by the testimony of Mrs. Rutherford, who had observed Mr. Hickey's classroom performance on nine separate occasions from September 21, 1969 to April 5, 1970. She testified in detail about Mr. Hickey's weaknesses as a teacher and about her unsuccessful attempts to assist him in the planning of his lessons. Even though Mr. Hickey testified that he received some satisfactory ratings and that Mrs. Rutherford's criticisms stemmed from a personal dispute with him involving their respective teaching schedules, the testimony of Mrs. Rutherford certainly constituted sufficiently substantial evidence to support the Board's findings. Mr. Hickey asserts, of course, that Mrs. Rutherford did not observe his classes sufficiently to make an intelligent judgment as to his performance. It was for the Board, however, to determine the credibility of the witnesses, and such credibility is a matter now beyond our scope of review. The Board did give great weight to the testimony of Mrs. Rutherford but this is clearly justifiable because she was not only the head of the art department and the holder of a supervisory certificate but she had on numerous occasions observed Mr. Hickey teach and had helped him prepare for his classes.

Mr. Hickey challenges the Board's dismissal procedures on the basis that he was deprived of the constitutional protection of due process of law, arguing that he was entitled both to a hearing by the Board before his employment was terminated and to an independent later review of the facts by the lower court. With respect to a pre-dismissal hearing, the record indicates, however, that he was given an opportunity for

a hearing on August 18, 1971, which was before the new school term began, and, while this opportunity may or may not have satisfied the requirements of the Local Agency Law, he chose to reject the opportunity and to pursue a mandamus action requiring another hearing. At that time he could have sought a preliminary injunction to prevent the Board from terminating his contract until after he had obtained the type of of hearing to which he felt he was entitled. As to his right to an independent judicial determination of the facts, he cites the 1920 case of *Ohio Valley Water Company v. Ben Avon Borough*, 253 U.S. 287 (1920). As this Court has recently noted, however, ". . . the United States Supreme Court has tended to ignore the Ben Avon doctrine in later cases and has usually applied the substantial evidence rule to findings of fact made by administrative agencies." (Citations omitted.) *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 11 Pa. Commonwealth Ct. 607, 612, 314 A. 2d 565, 567 (1974). We believe, therefore, that he has not suffered any loss of due process in the hearings afforded him.

Mr. Hickey further claims a denial of due process in that certain employes of the School District who would supposedly have testified in his favor at the Board hearing did not appear at the hearing and were not subpoenaed by the Board. He has demonstrated no efforts of his own, however, to seek their appearance or in any way to compel their testimony. If, as he claims, he was genuinely surprised by their nonappearance at the time of the hearing, he could have then sought a continuance. By failing to act then on his own, he may be considered to have waived his right to raise such objections at this time. *Man O'War Racing Association, Inc. v. State Horse Racing Commission*. 433 Pa. 432, 250 A. 2d 172 (1969).

Mr. Hickey also argues a denial of due process in that the Board had received records and information against him prior to his hearing, but he points to no such records or information in particular. He has in fact failed to demonstrate in any concrete fashion that he has been prejudiced or in any way whatever prevented from receiving a fair hearing. Moreover, the findings of fact made by the Board and the reasons given for its adjudication are all adequately supported by the record compiled at the hearing held on July 12, 1972.

Mr. Hickey argues that the lower court was in error in failing to require the introduction in evidence of 1200 IBM cards showing requests by students to go to his classroom during study or free periods. The record shows, however, that the existence of these cards was established by stipulation of counsel. It was incumbent upon Mr. Hickey, by his testimony, to explain the relevance of these student requests, and this he failed to do. By themselves, they could have little if any probative value.

Finally, Mr. Hickey claims error in the lower court's failure to rule separately on each of the exceptions taken by him. The lower court reviewed the record in its opinion, outlined the proper scope of review under which it had to proceed and then concluded that the findings of the Board were supported by substantial evidence and that there was no basis for Mr. Hickey's claim that he did not receive an impartial hearing or that the Board was arbitrary or capricious in its decision to dismiss him. These conclusions were unquestionably sufficient to meet every one of Mr. Hickey's exceptions.

The order of the court below is, therefore, affirmed.