Thomas E. MUIR, Superintendent of Schools, Juniata County School District and Juniata County School District

v.

Terry W. ALEXANDER, Board Secretary, Bald Eagle Area School District; Daniel F. Fisher, Superintendent of Schools, Bald Eagle Area School District; Bald Eagle Area School District and Carol J. Belas,

Appeal of Carol J. Belas.

Thomas E. Muir, Superintendent of Schools, Juniata County School District and Juniata County School District, Appellants

v.

Terry W. Alexander, Board Secretary, Bald Eagle Area School District; Daniel F. Fisher, Superintendent of Schools, Bald Eagle Area School District; Bald Eagle Area School District and Carol J. Belas.

Commonwealth Court of Pennsylvania.

Argued June 9, 2004.

Decided Sept. 8, 2004.

Joseph P. Green, Bellefonte, for appellants.

Elliot A. Strokoff, Harrisburg, for appellee, C. Belas.

Stuart L. Hall, Lock Haven, for appellees, Alexander, Fisher and Bald Eagle Area School District.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Terry W. Alexander, Secretary of the Board of the Bald Eagle Area School District, Daniel F. Fisher, Superintendent, and the Bald Eagle Area School District (collectively Bald Eagle) and Carol J. Belas (Belas) have appealed an order of the Court of Common Pleas of Centre County (trial court) directing Bald Eagle to produce a copy of a settlement agreement between Bald Eagle and Belas. In doing so, the trial court granted the petition of the Juniata County School District (Juniata) and Thomas E. Muir (Muir), Superintendent of Juniata, to compel this production, holding that the agreement in question was a public record under the act commonly referred to as the Right–to–Know Law.[1] Muir and Juniata have cross-appealed, seeking review of the trial court's failure to assess counsel fees against Bald Eagle for refusing to disclose the requested document. The appeals were consolidated by this Court.

The first issue raised in these appeals is whether an agreement between a school district and an employee, which establishes the terms of her separation from employment, must be disclosed to a requester under the Right–to–Know Law.[2] The sec-

---

1. Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1–66.4.

2. The Law was amended on June 29, 2002, effective in 180 days. Act of June 29, 2002,

ond issue is under what circumstances the requester, who prevails in litigation initiated to obtain a public record, is entitled to counsel fees under the Right–to–Know Law.

Muir's document request arose in the course of proceedings initiated by Juniata to dismiss Belas from its employ. Just prior to assuming her position with Juniata in 2002, Belas had been employed by Bald Eagle as its Director of Special Education. Belas declined to explain to Muir the circumstances of her departure from Bald Eagle, asserting that it was confidential. On January 23, 2003, after Muir learned that Belas had resigned from Bald Eagle pursuant to an agreement, he sent a letter[3] to Bald Eagle requesting a certified copy of the "Confidentiality Agreement" (Agreement) between Belas and Bald Eagle, as well as any other document relevant to Belas during the 2000–2001 school year. Reproduced Record at 12a (R.R. ——). Muir asserted that he had a right to these documents under the Right–to–Know Law.

On January 31, 2003, Bald Eagle's Solicitor responded to Muir's request. He noted that Muir's letter, which had been faxed after close of business, was not "seen" by district personnel until the next day. Accordingly, the Solicitor asserted that January 24, 2003, was the date for purposes of the timetables established in the Right–to–Know Law. The Solicitor then advised Muir of the several reasons for Bald Eagle's delay or refusal to comply with Muir's request.

First, the Solicitor advised Muir that under Bald Eagle's adopted policy, Muir's request for a public record was required to be directed to the Board's Secretary, not the district's Superintendent. Refusing to confirm or deny the existence of the Agreement, the Solicitor then observed that confidential agreements that were executed prior to the enactment of the 2002 amendments to the Right–to–Know Law were exempt from disclosure if they would have been so exempt at the time the agreement was executed.[4] Next, noting that public records need not be disclosed if their disclosure would impair an individual's reputation or security, the Solicitor requested Muir to explain whether he intended to use the Agreement in the dismissal proceeding pending against Belas. Finally, the Solicitor said there would be a delay in disclosing "any other public document" relating to Belas inasmuch as it required a review of voluminous records. R.R. 15a.

On February 11, 2003, Muir sent a letter to the Solicitor and Daniel F. Fisher, Superintendent, which he entitled "Exceptions to Denial of Public Records." R.R. 20a. He took issue with the notion that his request, which had been sent to the agency head, Superintendent Fisher, was

P.L. 663. The Bald Eagle District Minutes Excerpt referring to the resignation of Belas is dated June 19, 2001; accordingly, the settlement agreement, which was not admitted into evidence, is presumed to antedate the 2002 amendments.

3. Muir made all requests personally; Juniata does not have standing under the Right–to–Know Law to request public records. Access is limited to a "requester," which is defined as "[a] person who is a resident of the Com-

monwealth and requests a record pursuant to this act." Section 1 of the Right–to–Know Law, 65 P.S. § 66.1. A school district is not an individual residing in the Commonwealth of Pennsylvania.

4. Thus, the Solicitor explained that he was attempting to evaluate whether appellate court decisional law in effect at the time of the Agreement's execution would have immunized the Agreement from disclosure.

inadequate.[5] Muir then explained his version of what the law was at the time the Agreement was executed. Relying on this Court's holding in *Mirror Printing Co., Inc. v. Altoona Area School Board,* 148 Pa.Cmwlth. 168, 609 A.2d 917 (1992), Muir argued that the terms of an agreement presented to a school board for vote was a public record and, thus, disclosable even though documents relating to the basis for the teacher's discipline were, admittedly, not disclosable.[6] Muir explained that he sought only the Agreement shown to the Bald Eagle Board for a vote, not the minutes of an executive session relating to Belas' employment or the documents in her personnel file. Finally, Muir objected to Bald Eagle's refusal to provide the Board minutes relevant to Belas' separation from employment or to provide the Agreement in redacted form.[7]

On February 26, 2003, the Solicitor sent Muir a "follow up on my letter to you dated January 31, 2003 . . . ." R.R. 30a. The letter stated that the district had completed its document review and enclosed minutes of the Board's meetings on August 24, 2000, and June 14, 2001. Bald Eagle provided no other document nor did it offer an explanation for not providing them.

In addition to pursuing a Right–to–Know request, Juniata issued a subpoena to Bald Eagle's Superintendent, Fisher. The subpoena directed the Superintendent to appear and testify at a February 25, 2003 hearing and to bring with him copies of all agreements between Bald Eagle and Belas, including the Agreement, and all documents and notes in Belas' personnel file. Fisher did not appear at the hearing with the documents subpoenaed.

On April 11, 2003, Muir and Juniata filed a petition for review[8] with the trial court seeking relief under three legal theories. In Count I, petitioners asserted a right under the Right–to–Know Law for a copy of the Agreement and any other public records relating to Belas' separation from Bald Eagle's employment. In Count II, petitioners sought an order directing Superintendent Fisher to appear before the trial court with the documents requested

---

5. Nevertheless, on February 7, 2003, Muir renewed his request in a brief letter addressed to Terry W. Alexander, Board Secretary.

6. As noted by Bald Eagle in its brief, this Court held in *Mirror Printing* that the settlement agreement itself was *not* a public record. The salient terms of the settlement were presented to the School Board prior to its vote, and it was a matter of public record that the agreement involved discipline of the teacher. Here, the Bald Eagle minutes do not recite the terms of the settlement between Bald Eagle and Belas. Bald Eagle argues that because the Agreement is "sensitive," as was the agreement in *Mirror Printing,* it is exempt from disclosure. Bald Eagle also argues that under *Mirror Printing,* the Agreement was exempt at the time of its execution; thus, it is entitled to continued confidentiality under the 2002 amendments. *See* Section 7 of the Act of June 29, 2002, P.L. 663, the text of which is at n. 14, *infra.* Muir counters that

*Tribune–Review Publishing Co. v. Westmoreland County Housing Authority,* 574 Pa. 661, 833 A.2d 112 (2003) requires disclosure of settlement agreements between public employers and employees. Bald Eagle notes, however, that *Tribune–Review* post-dates the 2002 amendments and, further, applies to agreements with information "sensitive," *i.e.,* critical of, the public employer not the employee.

7. Muir's exceptions were supplemented on February 21, 2003, to include a recent decision of this Court supporting a disclosure of a public agency's confidential settlement agreement. The opinion provided by Muir was *Cogen, Sklar and Levick v. Commonwealth,* 814 A.2d 825 (Pa.Cmwlth.2003).

8. The pleading is titled "Petition for Review, Petition for Enforcement of Subpoena and/or to Compel Testimony; and, Alternatively, Complaint in Mandamus." R.R. 5a.

in Juniata's subpoena. In Count III, petitioners sought a writ of mandamus directing Bald Eagle to issue a final determination on Muir's exceptions to Bald Eagle's refusal to provide Muir with the Agreement.

On April 28, 2003, Belas filed a petition to intervene. After being granted intervention, Belas filed an answer asserting that Juniata's subpoena for Belas' confidential personnel records was unlawful. She contended that the Agreement was not a public record or, alternatively, it fell within the exceptions to disclosure established in the Right–to–Know Law. Belas also claimed that because of a confidentiality clause in the Agreement, it could not be disclosed. Finally, she asserted that mandamus was not a remedy available under the Right–to–Know Law.

Bald Eagle also answered the petition of Muir and Juniata. Its answer stated that the petition's allegations were, for the most part, conclusions of law to which no response was required; it also incorporated Belas' answer to the petition.[9] Bald Eagle asserted that the Agreement was a personnel record and, as such, could not be disclosed. Finally, Bald Eagle asserted that the subpoena to Fisher for Belas' personnel file was invalid because only Belas had authority, under the relevant statute, to subpoena her personnel files.

On September 9, 2003, the trial court conducted an evidentiary hearing on the petition for review of Muir and Juniata. Testimony was given by Muir and Fisher, and certain documents, including the above-referenced correspondence between Muir and Bald Eagle and the Board min-

utes, were received into evidence. The Agreement was provided to the trial court for *in camera* inspection; however, it was not admitted into the record. Although Belas was represented by counsel at the hearing, she did not testify.

On November 5, 2003, the trial court granted Muir's petition, and on January 8, 2004, the trial court issued its opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. The trial court identified the controversy as Muir's attempt to obtain a copy of

> [the Agreement] relating to the cessation of employment of Appellant Belas. Appellee Muir obtained a partial disclosure about this document from discussions recorded in the minutes of two [Bald Eagle] School Board meetings.

Opinion at 2. In resolving this controversy, the trial court made the following findings:

> [t]his document is an agreement of terms for Appellant Belas' resignation, which *likely constitutes some sort of severance package by [Bald Eagle] to Appellant Belas.* The Court finds, that from the limited information obtained from [Bald Eagle] School Board minutes, that the *document very likely constitutes a contract* ... fixing personal or property rights, privileges, duties or obligations of Appellant Belas ... *and must be disclosed.*

Opinion at 3–4 (emphasis added). In requiring disclosure of the Agreement, the trial court rejected the contention that a confidentiality clause in the Agreement could not thwart the right of access to public records.[10] The trial court did not address

---

**9.** Notably, Bald Eagle adopted Belas' position that mandamus was not a remedy available under the Right–to–Know Law.

**10.** The trial court did not address Belas' argument that the Agreement was part of her personnel file or that the Agreement could

impair her reputation or prejudice her. Implicitly, of course, these arguments were rejected.

the counts in the petition seeking to have Juniata's subpoena to Fisher enforced or to have Bald Eagle required by writ of mandamus to issue a final determination on Muir's exceptions. Further, the trial court did not address Muir's request for an award of counsel fees.

Belas and Bald Eagle District appealed the November 5, 2003 order. Thereafter, Muir and Juniata cross-appealed on the issue of attorney fees.[11]

■ On appeal,[12] Bald Eagle asserts that the trial court erred in holding that the Agreement is a public record that is disclosable. Bald Eagle maintains that the Agreement is an item from Belas' personnel file subject to restricted access under the act known as the Personnel Files Act;[13] therefore, it cannot be a "public record" under the Right–to–Know Law. Further, Bald Eagle asserts that Juniata seeks access to the Agreement with the intention of using the document to terminate Belas' employment; accordingly, the Agreement would prejudice or impair Belas' reputation and, thus, not disclosable

under the Right–to–Know Law. Finally, Bald Eagle contends that because the Agreement was executed prior to the 2002 amendments to the Right–to–Know Law, its confidentiality must be honored.[14]

Belas concurs with Bald Eagle's arguments. Additionally, she contends that she has a constitutional right to privacy, which shields the Agreement from disclosure notwithstanding the requirements of the Right–to–Know Law. Finally, Belas contends that the trial court's failure to make specific findings of fact about the Agreement impedes this Court's ability to undertake meaningful appellate review.

Muir and Juniata do not challenge the November 5, 2003, order. They maintain that should this Court affirm the "public record" classification of the Agreement, a remand for consideration and assessment of counsel fees should be granted under Section 4.1 of the Right–to–Know Law, 65 P.S. § 66.4–1.

■ Before addressing the substantive issues raised by the appellants, we consider the question of whether the trial

---

**11.** This Court designated Muir as the lead appellant.

**12.** Prior to the General Assembly's 2002 amendments to the Right–to–Know Law, this Court's scope of review was whether the denial of access to public records was for just cause. *Tribune–Review Publishing Co. v. Department of Community & Economic Development*, 814 A.2d 1261, 1263 n. 2 (Pa.Cmwlth. 2003). However, when the General Assembly amended the Law, it omitted the just cause standard. *See* 65 P.S. § 66.4. *Martella v. Department of Transportation*, 841 A.2d 633, 635 n. 9 (Pa.Cmwlth.2004). Because this is an appeal from a decision of a court of common pleas, we will apply the standard set forth in Section 754 of the Local Agency Law, 2 Pa. C.S. § 754. Our scope of review where the trial court has held a *de novo* hearing is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether findings

of fact are supported by substantial evidence. *Hickey v. Board of School Directors of Penn Manor School District*, 16 Pa.Cmwlth. 319, 328 A.2d 549 (1974).

**13.** Act of November 26, 1978, P.L. 1212, *as amended*, 43 P.S. §§ 1321–1324.

**14.** The 2002 amendments to the Right–to–Know Law provide in relevant part as follows:

If an agency receives a request for a record that is subject to a confidentiality agreement executed before the effective date of this act, the law in effect at the time the agreement was executed, including judicial interpretation of the law, shall govern access to the record, even if the record is a public record, unless all parties to the confidentiality agreement agree in writing to be governed by this act.

Section 7 of Act of June 29, 2002, P.L. 663, 65 P.S. § 66.7.

court properly exercised jurisdiction over the Right–to–Know Law count in the petition of Muir and Juniata. Specifically, the question is whether a Right–to–Know Law hearing on the Agreement should have been conducted by the agency, *i.e.,* Bald Eagle, before being presented to the trial court.

■ Under the 2002 amendments, when a requester files exceptions to a denial of a public record, the agency must issue a final determination that addresses each exception presented by a requester. Section 3.5(b) provides as follows:

> *[T]he agency head or his designee shall make a final determination regarding the exceptions within 30 days of the mailing date of the exceptions.* Prior to issuing the final determination regarding the exceptions, *the agency head or his designee may conduct a hearing.* The determination shall be the final order of the agency. If the agency head or his designee determines that the agency correctly denied the request for access, *the agency head or his designee shall provide a written explanation to the requester of the reason for the denial.*

65 P.S. § 66.3–5(b) (emphasis added). Under Section 1 of the Right–to–Know Law, an "agency" includes a "municipal authority or similar organization created by ... statute ... that ... performs ... an essential governmental function." 65 P.S. § 66.1. Plainly, Bald Eagle is an "agency" as the term is used in Section 3.5(b), and it is equally plain that Bald Eagle did not

respond to Muir's exceptions to Bald Eagle's denial of access to the Agreement.

Section 4 of the Right–to–Know Law governs judicial appeals, and it treats appeals from state agency denials differently from "non-Commonwealth" agency denials. Bald Eagle is a non-Commonwealth agency.[15] Section 4(b) addresses judicial appeals from a non-Commonwealth agency's refusal to provide a public record, stating:

> *Within 30 days of a denial by a non-Commonwealth agency under Section 3.4(c) or of the mailing date of a final determination of a non-Commonwealth agency* affirming the denial of access, a requester may file a petition for review or other document as might be required by rule of court with the court of common pleas for the county where the non-Commonwealth agency's office or facility is located or bring an action in the local magisterial district. A requester is entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

65 P.S. § 66.4(b) (emphasis added). By contrast, there is no direct appeal allowed from a Commonwealth agency's mere denial, only from its final determination "affirming the denial of access...." Section 4(a) of the Right–to–Know Law, 65 P.S. § 66.4(a).[16]

---

**15.** A non-Commonwealth agency is defined as "[a]n agency which is not a Commonwealth agency." *Section 1 of the Right–to–Know Law,* 65 P.S. § 66.1.

**16.** Section 4 of the Right–to–Know Law provides:

    (a) Commonwealth agency. Within 30 days of the mailing date of a final deter-

mination of a Commonwealth agency affirming the denial of access, a requester may file a petition for review or other document as might be required by rule of court with the Commonwealth Court.

65 P.S. 66.4(a).

Our task, then, is to construe the Section 3.5(b) mandate upon any agency, even a non-Commonwealth agency, to issue a final determination on exceptions together with the Section 4(b) right to seek judicial review of a mere denial of access to a public record. Stated otherwise, the question is whether the trial court properly exercised jurisdiction over the Right–to–Know Law count in Muir's petition in the absence of Bald Eagle's final determination on Muir's exceptions.

▇▇▇ As a jurisdictional defect, the failure to pursue a statutory remedy[17] may be raised at any point in a proceeding, by the parties or by the court *sua sponte.* Further, statutory remedies must be strictly construed. Section 1504 of the Statutory Construction Act of 1972 provides as follows:

> *In all cases where a remedy is provided* or a duty is enjoined or anything is directed to be done *by any statute, the directions of the statute shall be strictly pursued,* and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

1 Pa.C.S. § 1504.[18] Accordingly, a court is without power to act until statutory remedies have been exhausted. *Village Charter School v. Chester Upland School District,* 813 A.2d 20, 26 (Pa.Cmwlth.2002), citing *Terminato v. Pennsylvania National Insurance Company,* 538 Pa. 60, 645 A.2d 1287 (1994). Even where a constitutional question is presented, it remains the rule that a litigant must ordinarily follow statutorily-prescribed remedies. As explained by our Supreme Court

> The additional element required to confer equitable jurisdiction is either the absence of a statutorily-prescribed remedy or, if such a remedy exists, then a showing of its inadequacy in the circumstances.

*Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 276, 328 A.2d 819, 823 (1974).

Here, Muir had the option to seek judicial review within 30 days of Bald Eagle's denial of access to the Agreement. Section 4(b) of the Right–to–Know Law, 65 P.S. § 66.4(b). Indeed, had Bald Eagle's Solicitor never sent his response of January 31, 2003, Muir could have exercised his statutory right of judicial appeal. Where a non-Commonwealth agency fails to respond to a written request for access to a record within five business days of receipt of the request, the written request for access shall be "deemed" denied. Section 3.4(a) of the Right–to–Know Law, 65 P.S.

---

**17.** Our Supreme Court has explained the rationale for the doctrine that administrative remedies must be exhausted before seeking relief from courts, stating as follows:

> When the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency.

*Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 6, 383 A.2d 791, 793 (1977). Thus, the doctrine preserves the integrity of the administrative process. *Brog v. Department of Public Welfare,* 43 Pa.Cmwlth. 27, 401 A.2d 613 (1979).

**18.** The rule that statutory remedies must be strictly construed dates back to the earliest days of our Commonwealth. The above-quoted language from the Statutory Construction Act of 1972 is substantially the same as the language contained in the Act of March 21, 1806, P.L. 558, 46 P.S. § 156, repealed by the Act of December 6, 1972, P.L. 1339.

§ 66.3–4(a).[19]

However, Muir, as requester, chose to file exceptions to the Solicitor's denial. Once this choice was made, Bald Eagle was required, under the mandate in Section 3.5(b) of the Right–to–Know Law, to issue a final determination on Muir's exceptions. There is no provision in the statute for a "deemed final determination" on exceptions, as there is for a "deemed denial" of access to a document.[20] Section 3.5(b) designates the final determination of the agency in response to a requester's exceptions as the "final order of the agency." Until that final order is issued, judicial review is premature.

■ Bald Eagle did not respond to Muir's exceptions; there is, therefore, no final order—or final determination—from which a judicial appeal could be taken. The trial court lacked jurisdiction to determine the Right–to–Know Law issue presented in Muir's petition for review because the available, adequate and statutorily required administrative remedy had not been exhausted. As our Supreme Court explained in *Shenango Valley Osteopathic Hospital v. Department of Health*:

> The doctrine of exhaustion of administrative remedies as a restraint upon the exercise of a court's equitable powers not only reflects a recognition of the general assembly's directive of strict compliance with statutorily-prescribed remedies, it also acknowledges that an unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded.
>
> * * *
>
> *The premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area.*

499 Pa. 39, 47, 451 A.2d 434, 438 (1982) (emphasis added).

The failure to pursue the statutory procedure has produced a significant impediment to meaningful appellate review in this case. Bald Eagle's Board minutes of June 21, 2000 state:

> 8. That the resignation of Carol Belas, Director of Special Education, be approved effective August 31, 2001.

R.R. 32a. On the basis of this not very illuminating recital, the trial court found that the Agreement *"likely* constitutes some sort of severance package" and was a public record disclosable under the Right–to–Know Law. Opinion at 3. The object of the statutory procedure is as follows:

> A requester is entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

---

**19.** Prior to the 2002 amendments, Section 4 of the Right–to–Know Law provided:

> Any citizen of the Commonwealth of Pennsylvania denied any right granted to him by section 2 or section 3 of this act, may appeal from such denial. If such court determines that such denial was not for just and proper cause under the terms of this act, it may enter such order for disclosure as it may deem proper.

65 P.S. § 66.4, *amended by* Act of June 29, 2002, P.L. 663.

**20.** Under the statutory construction principle *expressio unius est exclusio alterius*, it must be presumed that the legislature intended to omit the concept of "deemed final determination" from the statutory scheme. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218 (2002).

Section 4(b) of the Right–to–Know Law, 65 P.S. § 66.4(b). The trial court's decision does not meet this standard, in part because it tried to explain its order in a manner that would not infringe upon Belas' appeal rights. (Belas' appellate victory, were she to succeed, would have been a hollow one if the trial court's opinion revealed the contents of the Agreement.) Bald Eagle's agency head was in a better position to issue a final determination with clear and concise findings in a way that did not compromise Belas' claims of confidentiality.[21] Indeed, a final determination from Bald Eagle might have resolved the matter entirely by ordering the production of a redacted version of the Agreement under authority of Section 3.2 of the Right–to–Know Law.[22]

■ This case is rich with issues, but they have not been presented to this Court in accordance with the procedures mandated by statute. The administrative process instituted by the General Assembly for disposition of Right–to–Know Law controversies has been prematurely interrupted by the trial court's acceptance of jurisdiction.[23] The trial court could have accepted jurisdiction had exceptions not been filed. However, once Muir filed exceptions, it became Bald Eagle's statutory duty to issue a final determination on those exceptions by its agency head. It was error for the trial court to exercise jurisdiction, except perhaps to order Bald Eagle to issue a final determination on Muir's February 11, 2003 exceptions.[24] It is our obligation to give full effect to all provisions of the Right–to–Know Law. 1 Pa.C.S. § 1921(a).[25] Further, these provisions are to be strictly construed. *Borough of Green Tree*, 459 Pa. at 277, 328 A.2d at 823. This requires us to construe the Section 3.5(b) mandate of a final determination on a requester's exceptions together with the right of judicial appeal set-forth in Section 4(b). Thus, we hold that where exceptions have been filed with a non-Commonwealth agency, judicial appeal is premature until the agency issues a final determination.

For these reasons, we vacate the order of the trial court and remand the matter for further proceedings consistent with this opinion.

---

**21.** It should be noted that Bald Eagle did not have to hold a hearing and neither did the trial court.

**22.** It states:

If an agency determines that a public record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record and cannot be separated, the agency shall redact from the public record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the public record if the information which is not subject to access is able to be redacted. Information which an agency redacts in accordance with this subsection shall be deemed a denial under section 3.3.
65 P.S. 66.3–2.

**23.** It is obvious from this record that all parties understood that their dispute was governed by the new procedures set forth in amendments to the Right–to–Know Law.

**24.** Belas asserts that mandamus is not a remedy under the Right–to–Know Law. However, where an agency has a statutory mandate, its duty to act may be compelled. *Pennsylvania Dental Association v. Insurance Department*, 512 Pa. 217, 227–228, 516 A.2d 647, 652 (1987). It goes without saying that mandamus does not lie to compel a government official to exercise discretion in a particular way. *Id.*

**25.** It states:

Every statute shall be construed, if possible, to give effect to all its provisions.

## ORDER

AND NOW, this 8th day of September, 2004, the order of the Court of Common Pleas of Centre County dated November 5, 2003, in the above-captioned matter is vacated, and the trial court is directed to dismiss Count I of the Petition for Review as an improvident appeal and to decide Counts II and III in a manner consistent with the attached Opinion.

Jurisdiction relinquished.