Patricia BONATESTA

v.

**NORTHERN CAMBRIA SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 6, 2012.

Filed July 13, 2012.

Bernard P. Matthews, Jr., Greensburg, for appellant.

Thomas M. Dickey, Altoona, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Northern Cambria School District appeals an order of the Court of Common Pleas of Cambria County (trial court) reversing its decision to suspend a district elementary school teacher, Patricia Bonatesta, for immoral conduct. The trial court concluded that the School Board's critical factual finding that Bonatesta had operated a vehicle while intoxicated was not supported by substantial evidence, leaving no basis for any discipline. Discerning no error, we affirm the trial court.

The School District's disciplinary action was prompted by its understanding of an event that took place the night of March 11, 2009, when Bonatesta's vehicle was stopped. Her vehicle was driven by Bonatesta's then boyfriend, David Mikitko, who had picked her up after she completed her shift as a cook at her parents' restaurant and bar. At approximately 9:00 p.m., Officer Ronald Schilling of the Susquehanna Township Police stopped Bonatesta's vehicle because he recognized Mikitko and knew that he was not allowed to operate a vehicle that was not equipped with an ignition interlock device. After receiving back-up from Officer Jason Owens of the Northern Cambria Borough Police, Schilling searched the vehicle and found a pistol registered to Bonatesta.[1] Because he found marijuana and drug paraphernalia in the vehicle, Schilling charged Mikitko and Bonatesta with possession of drugs and drug paraphernalia. Mikitko was separately charged for an interlock violation. Neither was charged with driving under

---

1. Schilling began following Bonatesta's vehicle while still in Northern Cambria Borough, outside his jurisdiction, but did not do the traffic stop until the vehicle crossed into Susquehanna Township.

the influence, and the officers allowed Bonatesta to drive the vehicle away from the scene. Reproduced Record at 181a (R.R. ——).

In response to this incident, the School District suspended Bonatesta without pay. In May 2009, the School District initiated a termination proceeding against Bonatesta pursuant to Section 1122 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1122.[2] The School District charged Bonatesta with immorality, based on her alleged possession of drugs, drug paraphernalia and a firearm. The termination proceeding was stayed, pending the outcome of the criminal charges.

On August 19, 2009, a suppression hearing was held before the trial court's criminal division at which Officers Schilling and Owens testified. Schilling testified that he found marijuana and drug paraphernalia in Bonatesta's vehicle and that Mikitko smelled of marijuana. He acknowledged that Mikitko was not tested for driving under the influence. Because Bonatesta had been working at a bar just before the traffic stop, Schilling asked Owens to give her a portable breathalyzer test. Schilling allowed Bonatesta to drive the vehicle away from the scene after Owens assured him that Bonatesta had passed the breathalyzer test.

Owens testified and contradicted Schilling's testimony. Owens testified that he did not see either drugs or drug paraphernalia in Bonatesta's vehicle; further, he did not observe Bonatesta to violate the law in any way. Owens confirmed that he administered a portable breathalyzer test to Bonatesta, and it showed that her blood alcohol level fell within the legal limits.

As a result of the suppression hearing, the criminal drug charges against Bonatesta and Mikitko were dismissed. However, Mikitko pleaded guilty to operating a vehicle without an interlock device.

On April 22, 2010, Bonatesta was called before the School District's superintendent and human resources director for a pre-termination *Loudermill* hearing.[3] At the time, Bonatesta had been teaching elementary school for 17 years and had never received a negative evaluation. The hearing was recorded.

Bonatesta explained that Mikitko picked her up in her vehicle at 9:00 p.m. on March 11, 2009, after she completed her shift at her parents' restaurant. Mikitko "seemed all right" to Bonatesta, and it did not appear to her that Mikitko was under the influence of drugs or alcohol. R.R. 199a, 201a. Bonatesta stated that she had not been drinking that evening. However, after reflection, she stated that she may have had one drink.[4] Bonatesta denied

---

**2.** Section 1122(a) states, in relevant part, as follows:

> The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe *shall be immorality;* incompetency; unsatisfactory teaching performance ...; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties; physical or mental disability ...; advocation of or participating in un-American or subversive doctrines; conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and wilful vio-

lation of or failure to comply with school laws....

24 P.S. § 11–1122(a) (emphasis added).

**3.** Under *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), due process requires that a public employee must receive a pre-termination hearing. *See, e.g., McFerren v. Farrell Area School District,* 993 A.2d 344, 348 n. 2 (Pa.Cmwlth.2010).

**4.** Bonatesta specifically stated as follows:

being intoxicated and pointed out that she had passed the breathalyzer test and was allowed to drive her vehicle home. Bonatesta acknowledged that she had a gun in the car, for which she has a permit. She had placed it in her car because she and Mikitko were planning to go camping and wanted to have the gun with them for protection. Bonatesta explained that she never drove to school with the gun in the car.

Following the *Loudermill* hearing, the School District issued amended termination charges, which alleged that: Bonatesta had allowed Mikitko to drive her car while he was intoxicated; Bonatesta was so intoxicated that she could not safely operate the vehicle; and Bonatesta had made a false statement at the *Loudermill* hearing by claiming that she had imbibed no more than one drink on March 11, 2009. Based on the amended charges, the School District sought Bonatesta's termination.

On June 10, 2010, the School Board conducted a hearing on these charges.[5] Bonatesta appeared and briefly testified. Bonatesta clarified that she could not be sure whether she had one drink or two drinks after finishing her shift on March 11, 2009, but it was definitely no more than two drinks. Bonatesta testified that "I definitely was not intoxicated when I left work that night." R.R. 56a. Bonatesta reiterated that she had no reason to believe Mikitko was under the influence when she got in the car with him or during the short time they were driving before being pulled over. Bonatesta explained that Mikitko had brought his children to the restaurant for pizza earlier that evening, where she had seen him drinking only soda. Because Mikitko had his children that evening, she did not believe he would be under the influence of anything.

Officer Owens appeared and testified at the School Board hearing. He explained that Schilling had contacted the Northern Cambria Borough Police when he spotted Mikitko in Northern Cambria Borough in a vehicle without an interlock device. Because Schilling did not respond to the Northern Cambria's dispatcher's calls to him, Owens was sent to the scene. Owens testified that he believed Mikitko was intoxicated because he was having "trouble standing on his own." R.R. 60a. Owens testified that he believed Bonatesta was also intoxicated. Specifically, he testified as follows:

> **School District's counsel:** And based on [the breathalyzer] test and [your] observation of Miss Bonatesta, did you

---

> **School District's counsel:** So, you say you hadn't been drinking at all; you hadn't had any drinks at all?
> **Bonatesta:** I may have—after work I— maybe I had one. I didn't have—I mean, it has been a long time, but I mean, if I had one, that is it. I didn't—you know, it wasn't like I was sitting there drinking. I might have had, you know, one drink[.] R.R. 200a.

5. The hearing is guaranteed by Section 1127 of the School Code, which states, in relevant part, as follows:

> Before any professional employe having attained a status of permanent tenure is dismissed by *the board of school directors*, such board of school directors shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and *shall conduct a hearing.* A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges.

24 P.S. § 11-1127 (emphasis added).

conclude whether or not she was intoxicated at the time?

**Officer Owens:** Yeah, she shouldn't have been driving.

**School District's counsel:** So, you say she was intoxicated?

**Officer Owens:** Yeah.

R.R. 62a. Owens explained that because he was outside his jurisdiction and merely providing back-up, he could not prevent Bonatesta from driving away, even though driving under the influence is a violation of the law.[6] According to Owens, it was strictly "Officer Schilling's call" to allow Bonatesta to drive away from the scene. R.R. 66a.

On cross-examination, Owens admitted that he had testified under oath at the suppression hearing that Bonatesta (1) had passed the breathalyzer test, (2) was fine to drive, and (3) was not seen to violate the law in any way. Owens also admitted that he did not do any field sobriety tests on Bonatesta, such as the horizontal gaze nystagmus test or having her recite the alphabet. Owens acknowledged that his police report about the incident did not record that Bonatesta was intoxicated and should not have been allowed to drive that evening. Owens testified that Bonatesta's breathalyzer showed a .04 blood alcohol level, which is half Pennsylvania's legal limit of .08.[7] Owens also acknowledged that he had been instructed by his superiors to document all interactions involving

Officer Schilling because there had been numerous complaints about Schilling watching bars outside his jurisdiction, planting evidence and attempting to set people up.

In addition to this testimony, the School District submitted the transcript of the suppression hearing into evidence. The School District also submitted Owens' police report into evidence. Officer Schilling did not make a police report and did not testify before the School Board.

The School Board credited Owens' testimony that Mikitko was so intoxicated that he could not stand up without assistance and that Bonatesta was intoxicated and should not have been permitted to drive. The School Board further found that because Bonatesta was intoxicated, she had lied at her *Loudermill* hearing where she stated she had at most one alcoholic drink prior to the traffic stop. Based on these findings, the School Board determined that Bonatesta engaged in immoral behavior, which offended the morals of the community and served as a bad example to her students. The School Board cited four instances of immorality:

(a) [Bonatesta] knowingly occupied a motor vehicle operated by a driver (Mikitko) who was intoxicated to the point that he had difficulty standing without assistance;

(b) she was visibly intoxicated during the traffic stop according to the

---

**6.** Officer Owens further testified as follows:

**Bonatesta's counsel:** So what you are telling me, officer, then is if you see a violation of the law, you are going to let that happen on a technicality that that is outside your jurisdiction?

**Officer Owens:** That is correct.

R.R. 63a.

**7.** In his report, Officer Owens listed Bonatesta's blood alcohol level as 0.42. The trial court concluded this was an error, most likely the result of a misplaced decimal point. A

person with a blood alcohol level of .42 would be severely impaired, if not unconscious or dead. The trial court's finding is consistent with Owens' testimony at the suppression hearing, where he stated that Bonatesta passed the test, which would be impossible if the result was actually .42. In Pennsylvania, a person is not permitted to drive if his or her blood alcohol level is .08 percent or higher. Section 3802(a)(2) of the Vehicle Code, 75 Pa.C.S. § 3802(a)(2).

credible testimony of Officer Jason Owens;

(c) while intoxicated, she and an intoxicated driver traveled through the community with a gun in the vehicle which, according to her testimony, she did not intend to use until several days later during a camping trip; and

(d) she was not truthful during her *Loudermill* interview regarding her alcohol consumption or intoxication during the traffic stop on March 11, 2009.

Adjudication, Finding of Fact ¶ 20(a)-(d). Any one of the above-listed incidents, standing alone, would justify a termination. However, the School Board unanimously voted to suspend Bonatesta without pay until August 25, 2010, and not to terminate her employment.

Bonatesta appealed, and the trial court reversed. It concluded that the School Board's decision was arbitrary and capricious because it was not founded upon substantial evidence. Specifically, the factual findings that Bonatesta and Mikitko had been intoxicated and that Bonatesta had been untruthful about her alcohol consumption were based solely on Owens' testimony at the School Board hearing, which was contradicted by Owens' own testimony at the 2009 suppression hearing. The finding was also contradicted by all other evidence, which the Board had willfully and deliberately disregarded. The trial court concluded that no reasonable person would accept Owens' testimony, *i.e.*, "yeah," as adequate to support a finding that Bonatesta was intoxicated where her breathalyzer test result of .042 was consistent with a 120–pound female consuming one drink. The test confirmed that Bonatesta was not intoxicated. The trial court reasoned that Owens' testimony at the suppression hearing, which was given close in time to the incident, was more reliable than his revised version given at the School Board hearing. The latter was "likely flawed by poor memory." Trial Court Opinion at 7. The trial court found Owens' testimony that he, a sworn law enforcement officer, would allow an intoxicated person to drive away was "completely incredible." *Id.* Finally, the trial court found there was absolutely no evidence in the record that Bonatesta knew she was entering a vehicle operated by an intoxicated driver or that Mikitko was actually intoxicated. *Id.*

The trial court concluded that because the Board's findings of fact were not supported by substantial evidence, there was no basis for concluding that Bonatesta had engaged in immoral behavior. The trial court also concluded that it was not immoral for Bonatesta to have a gun in her vehicle because gun ownership is widely accepted in Cambria County. The trial court ordered the School District to pay Bonatesta back pay for the period of her suspension.

■ The School District appealed to this Court.[8] On appeal,[9] the School Dis-

---

8. The trial court issued a PA. R.A.P. 1925(a) Opinion addressing the School District's claim that the trial court misapplied the substantial evidence test by relying on the results of Bonatesta's portable breathalyzer test when those results are inadmissible in court; by referencing a blood alcohol content chart that was not made part of the record; and by making findings that the community tolerated gun ownership without supporting evidence.

The trial court stated that it had not erred in these three aspects but even if it had, any mistake was harmless error.

9. Where a complete record is made before the school board and the trial court takes no additional evidence, this Court must affirm the action of the school board unless constitutional rights were violated, the school board manifestly abused its discretion or committed

trict raises two main issues for our consideration. First, the School District argues that the trial court erred in concluding that the School Board's factual findings were not supported by substantial evidence. Second, the School District argues that the trial court erred by holding that the School District was required to prove immorality in order to suspend Bonatesta.

We begin with a review of Section 1122(a) of the School Code, 24 P.S. § 11–1122(a), under which Bonatesta was charged.[10] Section 1122(a) names immorality as one of the valid causes for terminating a teacher under contract. The School Code does not define immorality, but Pennsylvania courts have defined immorality "as conduct that 'offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate.'" *McFerren v. Farrell Area School District*, 993 A.2d 344, 353 (Pa.Cmwlth.2010) (quoting *Horosko v. School District of Mt. Pleasant Township*, 335 Pa. 369, 372, 6 A.2d 866, 868 (1939)). To establish immorality, the school district must prove three elements: (1) *that the alleged immoral act actually occurred;* (2) that the act offends the morals of the community; and (3) that the act sets a bad example for students. *McFerren*, 993 A.2d at 353–54 (citing *Kinniry v. Abington School District*, 673 A.2d 429, 432 (Pa.Cmwlth.1996)) (emphasis added).

The School Board based its charges of immorality on four specific factual findings: Bonatesta's intoxication the evening of March 11, 2009; allowing Mikitko, who was intoxicated, to drive her car; keeping a gun in her car while it was operated by intoxicated drivers; and lying at her *Loudermill* hearing that she was not intoxicated on the evening in question. Adjudication, Finding of Fact ¶ 20(a)-(d). The School Board's suspension for immoral conduct hinges on these factual findings.

Findings of fact must be supported by substantial evidence. *Monaghan v. Board of School Directors*, 152 Pa.Cmwlth. 348, 618 A.2d 1239, 1244 (1992). Substantial evidence is such relevant evidence that a *reasonable mind* might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth. 382, 539 A.2d 11, 14 (1988) (emphasis added). When performing a substantial evidence analysis, the court must view the evidence in the light most favorable to the party that prevailed before the fact finder. *Agostino v. Township of Collier*, 968 A.2d 258, 269 (Pa.Cmwlth.2009). It is for the school board, not the court, to assess the credibility of the witnesses. *Hickey v. Board of School Directors of Penn Manor School District*, 16 Pa.Cmwlth. 319, 328 A.2d 549, 551 (1974). However, a court will "overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.'" *Agostino*, 968 A.2d at 263–64. "A capricious disregard of evidence exists only when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result.'" *Agostino*, 968 A.2d at 264 (quoting *Station Square Gaming L.P. v. Pennsylvania*

an error of law, or any finding of fact necessary to support its adjudication is not supported by substantial evidence. *Hickey v. Board of School Directors of Penn Manor*

*School District*, 16 Pa.Cmwlth. 319, 328 A.2d 549, 551 (1974).

**10.** The relevant text of Section 1122(a) is found in footnote 2, *supra*.

*Gaming Control Board,* 592 Pa. 664, 673, 927 A.2d 232, 237 (2007)).

■ The School District argues that Owens' testimony at the School Board hearing constitutes substantial evidence to support all its critical findings. The School District contends that the School Board did not ignore evidence that favored Bonatesta; rather, it decided that Owens' School Board hearing testimony was more reliable than that other evidence. Further, the School Board witnessed Owens' live testimony, and reviewing courts may not substitute their own credibility determinations for that of the factfinder. Finally, the School Board argues that Bonatesta's breathalyzer test results cannot be used to contradict Owens' testimony because breathalyzer test results are not admissible in court. Bonatesta responds that to reverse the trial court would require this Court to ignore the overwhelming and documentary evidence that neither Bonatesta nor Mikitko was intoxicated on the evening in question.

The sole evidence that Bonatesta was intoxicated on the night of March 11, 2009, was Owens' testimony at the School Board hearing. The complete sum and substance of that testimony was his statement that "she shouldn't have been driving" and a reply of "yeah" in response to a leading question from counsel for the School District. R.R. 62a. Owens did not describe anything in Bonatesta's conduct or appearance to support his "yeah" she was intoxicated, even though he had been close enough to Bonatesta to administer a breathalyzer test. Owens admitted that he did not do any field sobriety tests, and Owens did not mention Bonatesta's purported intoxication in his police report.

Bonatesta was given a breathalyzer test and allowed to drive her vehicle home. The School District is correct that preliminary breathalyzer test results are not ad-

missible in a criminal trial to prove that an individual was driving under the influence. *Commonwealth v. Stanley,* 427 Pa.Super. 422, 629 A.2d 940, 941–42 (1993). However, that does not mean that the results are irrelevant in all civil proceedings. *See, e.g., Schindler v. Department of Transportation, Bureau of Driver Licensing,* 976 A.2d 601, 605–06 (Pa.Cmwlth.), *appeal denied,* 603 Pa. 706, 983 A.2d 1250 (2009) (preliminary breathalyzer test results were admitted for the purpose of determining whether officer had reasonable grounds to believe licensee was intoxicated). The trial court did not err in relying upon the breathalyzer test, as one among several items of evidence that undermined the reliability of Owens' testimony at the School Board hearing.

Further, Owens' hearing testimony that Bonatesta was intoxicated was contradicted by *his own prior testimony under oath* in a court of law at the suppression hearing. There, Owens had testified that he did not see Bonatesta violate the law in any way; that Bonatesta's breathalyzer test showed that she was fit to drive; and that he and Schilling allowed Bonatesta to drive away from the scene. Owens completely contradicted *his own account* of what happened on the night of March 11, 2009, and offered no explanation for his about face.

Further, as aptly observed by the trial court, Owens' conduct on the night of March 11, 2009, undermines his testimony before the School Board that Bonatesta was intoxicated. It means that while on duty, he stood by and allowed Bonatesta to take control of her vehicle in an intoxicated state, risking her life, her passenger's life and the lives of innocent third parties. Further, Owens was not correct that he lacked authority to act in another jurisdiction to prevent or respond to criminal acts

outside his own township.[11] Owens advised Schilling that Bonatesta was able to drive from the scene because she was not intoxicated.

Owens' single word, "yeah," in response to a question from the School District's counsel, forms the entire basis for the Board's finding that Bonatesta was intoxicated on the evening of March 11, 2009. Against that vague and unexplained conclusory remark, an avalanche of other evidence showed that Bonatesta was not intoxicated. This other evidence consists of Owens' own testimony given under oath five months after the incident; Owens' own written report of the incident; and Owens' conduct on the night in question. Owens' testimony at the School Board hearing is not evidence that a *reasonable* mind would accept as adequate to support a finding of fact. The School Board willfully, and capriciously, disregarded all other conflicting evidence, including that provided by Owens himself.

We affirm the trial court's conclusion that Owens' opinion testimony, abbreviated and unexplained, is not substantial evidence that can support a finding that Bonatesta was intoxicated on the evening of March 11, 2009. The School Board's credibility determination was arbitrary, capricious and so flawed as to render it irrational. *Agostino*, 968 A.2d at 263–64. This is the rare instance where a credibility finding may be set aside on judicial review. *Id.*

■ The Board's finding that Bonatesta acted immorally by allowing her vehicle to be driven by an intoxicated driver is likewise not supported by substantial evidence.[12] This finding was based on Owens' testimony at the hearing that Mikitko had trouble standing on his own. Mikitko was not charged with DUI, and he was not tested at the scene to see if he was intoxicated. Further, the School District presented no evidence that Bonatesta believed Mikitko was intoxicated. To the contrary, it was her uncontradicted testimony that she believed he was not intoxicated.

This leaves the Board's holding that Bonatesta acted immorally by having her gun

---

**11.** As pointed out by the trial court, under Section 8953(a) of the act commonly referred to as the Municipal Police Jurisdiction Act, a police officer who is called to another jurisdiction to provide back-up is empowered to enforce the law there just as though he were in his own jurisdiction. Further, if in another jurisdiction on official business, an officer is empowered to act if he witnesses a crime. Specifically, Section 8953(a) states as follows:

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

\* \* \*

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

\* \* \*

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953(a)(3), (5).

**12.** Teacher discipline may be upheld if only a single basis is established. *Williams v. Joint Operating Committee of the Clearfield County Vocational Technical School*, 824 A.2d 1233, 1236 (Pa.Cmwlth.2003).

in a car while she and Mikitko were intoxicated. The School District agrees that Bonatesta's gun ownership was lawful, but it faulted her for placing her gun in the presence of two intoxicated individuals. Because there is no substantial evidence that either Bonatesta or Mikitko was intoxicated, the Board's conclusion lacks a factual foundation.

Finally, the Board found that Bonatesta was untruthful during her *Loudermill* hearing about her intoxication on March 11, 2009. Again, in the absence of substantial evidence of intoxication, it does not follow that Bonatesta was untruthful when she denied being intoxicated on that evening. Bonatesta expressed some doubt about what she had to drink that evening because of the passage of time. However, she acknowledged that she may have had one drink.[13] Before the School Board, she clarified that she had at most two drinks. She testified unwaveringly and with absolute certainty at both hearings, however, that she was not intoxicated. This was supported by all evidence, including Owens' sworn testimony at the suppression hearing until he inexplicably changed his testimony before the School Board. There

is no substantial evidence that Bonatesta lied at her *Loudermill* hearing.

In sum, there is no substantial evidence to support the Board's finding that Bonatesta was intoxicated on the evening in question. Accordingly, there is no factual foundation to the Board's conclusion that Bonatesta committed immoral conduct. The trial court correctly reversed the District's suspension and awarded back pay to Bonatesta.

The School District argues, however, that it was not required to prove immorality under the School Code because that applies to a firing and Bonatesta was only suspended. Under *Battaglia v. Lakeland School District*, 677 A.2d 1294, 1299 (Pa. Cmwlth.1996), the School District argues that it has inherent managerial authority to suspend or demote a teacher. Further, courts may not revisit the soundness of a managerial decision unless it is arbitrary, capricious or discriminatory. The School District's argument misses the mark. The discipline in this case was based upon findings of fact that are not supported by substantial evidence. The Board lacked any basis for discipline, even a suspension.[14]

**13.** The School District takes issue with the trial court's reference to a blood alcohol content chart, which was not submitted into evidence, showing that a .042 blood alcohol level is consistent with a 120–pound woman consuming one drink, as support for Bonatesta's veracity. As observed by the Superior Court, "our Supreme Court has recognized that there are *widely available charts* concerning the number of drinks that can be safely consumed....'" *Commonwealth v. Beshore*, 916 A.2d 1128, 1136 (Pa.Super.2007) (quoting *Commonwealth v. Thur*, 906 A.2d 552, 562 (Pa.Super.2006)) (emphasis added). The blood alcohol content chart consulted by the trial court is found on the website of the Pennsylvania Liquor Control Board at *http://www.lcb.state.pa.us/portal/server.pt/community/alcohol_the_law/17511/bac_chart_-_female/611971*. However, we need not determine whether the trial court erred in tak-

ing judicial notice of the chart because, at most, reference to the chart could have been harmless error. Without substantial evidence that Bonatesta was intoxicated, the findings that she was intoxicated and lied about her alcohol consumption cannot stand.

**14.** The School District also likens Bonatesta's situation to *Rike v. Commonwealth, Secretary of Education*, 508 Pa. 190, 494 A.2d 1388 (1985). There, following a Section 1127 hearing, the school board found that a teacher had committed acts of cruelty and immorality, but opted to suspend rather than terminate him. Our Supreme Court held that a school board "possesses the authority to impose lesser forms of discipline than complete termination of a tenured teacher's contract." *Id.* at 195, 494 A.2d at 1390. However, *Rike* is inapposite because the teacher there admitted to the charges.

For these reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 13th day of July, 2012, the order of the Court of Common Pleas of Cambria County dated April 5, 2011, in the above captioned matter is hereby AFFIRMED.