Katharina LAUER, Petitioner,

v.

### MILLVILLE AREA SCHOOL DISTRICT, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1995.

Decided March 31, 1995.

---

Charles L. Herring, for petitioner.

Stephen S. Russell, Chief Counsel, for respondent.

Joseph M. Miller, Asst. Counsel, for amicus curiae, Pennsylvania Dept. of Educ.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This appeal pertains to the dismissal of Katharina Lauer, a teacher since 1968, by the Millville Area School District (District or School District) under the Public School Code of 1949 (School Code).[1]

The School District notified Lauer of dismissal charges in the summer of 1990. The charges alleged that Lauer should be dismissed from her position as a tenured professional employee of the District by reason of incompetency, intemperance, persistent negligence and persistent and wilful violation of the school laws. Hearings on the charges were conducted and, on October 14, 1991, the Board of School Directors of the District issued its decision, signed by six directors, sustaining Lauer's dismissal on all charges. Lauer appealed that decision to the Secretary of Education (Secretary) on October 28, 1991. On June 9, 1994, the Secretary issued his opinion wherein he refused to uphold the Board of School Directors on the charges of incompetency, intemperance and persistent and wilful violation of the school laws. However, the Secretary affirmed the Board of School Directors' decision sustaining Lauer's dismissal on the ground of persistent negligence.

■ Lauer filed a petition for review with this Court. This Court must affirm the Secretary's order unless there is a violation of constitutional rights, an error of law or if necessary findings of fact are unsupported by substantial evidence. *Horton v. Jefferson County–Dubois Area Vocational Technical School*, 157 Pa.Commonwealth Ct. 424, 630 A.2d 481 (1993).

There is no doubt that the Secretary gave careful consideration to Lauer's case. In his thorough, forty-two page opinion, he reviewed each charge in detail and decided which of the many charges were based solely on hearsay and which charges needed credibility finding.[2]

■ However, before analyzing the facts as found by the Secretary to determine whether they support the charge of "persistent negligence," it is important to ascertain a definition of that term. In doing so, we consider it advisable to keep in mind what was said about the broad purpose of the statutory teacher tenure provision.[3] That statute "is intended to provide the greatest measure of protection possible against dismissal of employees ..." *Teachers' Tenure Act Cases*, 329 Pa. 213, 234, 197 A. 344, 357 (1938). Against this background, we examine the specific applicable School Code section which provides the bases for termination of a professional employee's contract. It states in relevant part:

> The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, *persistent negligence*, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school

---

1. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

2. The opinion was filed thirty-two months after the appeal and twenty-six months after a hearing. Lauer contends that such inordinate delay denied her constitutional rights. In view of our disposition of this case, it is unnecessary to consider this argument, but we certainly do not approve of such delay.

3. The relevant provision here was originally Section 2(a) of the Teachers' Tenure Act of April 6, 1937, P.L. 213, No. 52.

laws of this Commonwealth on the part of the professional employee....

24 P.S. § 11–1122 (emphasis added). It is thus apparent that the legislature intended to protect tenure except for the serious charges listed.

The School Code does not define the charge of persistent negligence. Negligence, of course, is easy to define as the failure to exercise that care a reasonable person would exercise under the circumstances. However, when the word "persistent" is added as a modifier, our task of defining the charge is not as easy. Lauer argues that persistent means wilful and quotes Webster's New Collegiate Dictionary as follows:

Persistent: To take a stand, stand firm; to go on resolutely or stubbornly in spite of opposition, importunity, or warning; to remain unchanged or fixed in a specific character, condition or position; to be insistent in a repetition or pressing of an utterance (as a question or an opinion); to continue to exist past the usual expected or normal time.

■ We do not agree that there is any wilfulness inherent in the charge of persistent negligence, because the word "negligent" is the antithesis of "wilful". We therefore reject Lauer's first argument that the charge cannot be upheld where the Secretary found, in dismissing the other charges and in discussing this persistent negligence charge, that Lauer's actions were not wilful.

■ Nevertheless, it is apparent that negligence alone cannot form the basis of dismissal. We conclude that the word persistent includes some manner of meaningful continuity and, in most instances, such continuity will be in the face of warnings by superiors. To conclude otherwise would certainly diminish the purpose of the statute in providing "the greatest protection possible against dismissal." We are supported in this view by cases such as *Sinton's Case,* 151 Pa.Superior Ct. 543, 548, 30 A.2d 628, 630 (1943), where the Superior Court said " '[p]ersistent' means continuing or constant," and *Strinich v. Clairton School District,* 494

Pa. 297, 305, 431 A.2d 267, 271 (1981), *cert. den.,* 456 U.S. 982, 102 S.Ct. 2254, 72 L.Ed.2d 860 (1982) (quoting *Lucciola v. Secretary of Education,* 25 Pa.Commonwealth Ct. 419, 423, 360 A.2d 310, 312 (1976)),[4] where the Supreme Court approved the following language:

As a general proposition, 'persistent' is defined as 'continuing' or 'constant'. In particular application, persistency characterizes a violation of the school laws by a professional employee where the violation occurs either as a series of individual incidences, or as one incident carried on for a substantial period of time.

In *Harrison v. Capital Area Intermediate Unit,* 84 Pa.Commonwealth Ct. 344, 347, 479 A.2d 62, 64 (1984) (emphasis added), this Court said as well:

Dismissal for persistent negligence is warranted when a teacher fails to comply with a directive of supervisors *on numerous occasions.* In fact, a single act, *continued for a period of time,* may support dismissal for persistent negligence.

We thus conclude there must be sufficient continuity and repetition of negligent acts to support a charge of persistent negligence. We now turn to the facts of this case.

■ In discussing the complaint of persistent negligence, the Secretary found the following facts:

The Findings of Fact reflect eight instances of inappropriate conduct by Lauer over the four years in question. All of these occurrences involve inappropriate remarks made by Lauer. During the 1986–87 school year, the first two instances occurred: one was an oral comment to her class and the other was written on a student's paper. In the first of these, Lauer stated to her class that one of their classmates, Christopher, was being moved to another classroom because he was "a liar and did bad things." Finding No. 8a. This statement was made in front of the student and the entire class. *Id.* Lauer admitted that she should not have said this. *Id.* The remark was obviously de-

4. Part of *Strinich* which is not relevant here was overruled in *Belasco v. Board of Public Edu-* *cation of the School District of Pittsburgh,* 510 Pa. 504, 510 A.2d 337 (1986).

meaning, and it was improper for Lauer to have made it. In the second incident, Lauer wrote, "0 = vocab grade," and beneath it, "You're hopeless!" on a student's paper. Finding No. 8b. This remark was also demeaning and counterproductive, and should not have been made.

Principal Young confronted Lauer concerning both of these statements and made it clear to Lauer that such comments were demeaning and improper. *See* Finding No. 9.

Four more instances of improper remarks occurred during the 1987–88 school year. *See* Finding No. 13. The first of these was Lauer's statement to her fourth grade class that they could tell their parents that "you have had sex in class today the amoeba way." This was improper for a fourth grade audience. The second incident occurred the following day (after a parent called her to complain about the original statement), when Lauer stated to her class, "Thanks to Tiffany, we can't study the amoeba." This retaliatory remark was improper and tends to humiliate the child. Third, in front of many third, fourth, and fifth grade students, Lauer referred to a bowl of prunes as "monkey nuts." As explained in the Findings, the words chosen and the context indicate that this statement was inappropriate. Fourth, Lauer took a very aggressive approach during a parent-teacher conference, in which she started the conference by presenting a completely negative picture of the child to the parent. This approach, which is counterproductive as well as demeaning, was unacceptable behavior to the District.

(Secretary's Decision, June 9, 1994, pp. 40–41).

Based solely on the six remarks in the first two years (1986–87 and 1987–88) of the four-year period preceding Lauer's dismissal, the Secretary could have found "persistent" negligence immediately after those first two years, and the remarks in these two years could form some basis for later dismissal. However, it is clear that the precipitating cause of the dismissal was the remarks made by Lauer after those first two years. We therefore examine what happened after those first two years to test the accuracy of the description of Lauer's conduct as persistent. In fact, the Secretary found Lauer to have been associated with no instances of inappropriate remarks or comments in 1988–89 and involved in only two instances in 1989–90 which appear relatively minor. We thus examine the two incidents which seem to have precipitated the firing of this teacher of almost twenty-two years.

The first incident is described by the Secretary as follows:

> The first came after Brenda H. had failed to help her daughter, Amanda, complete an assignment. Lauer made this statement to Amanda: "And your mother criticized me for the way I do my work." *Id.* This statement is inappropriate because it ridicules the parent and demeans the child.

(Secretary's Decision, June 9, 1994, p. 41). Perhaps the cited statement should not have been made, but it certainly was understandable that a teacher who had been criticized by a parent, who then found that same parent refused to help her daughter with her homework, would make such a spontaneous remark.[5] In this day and age, we conclude it is error to permit this remark to be one of two remarks that precipitate a firing under the School Code.

The second incident relied upon, after a year free of incidents, is described as follows:

> The second concerns Lauer's statement in response to being called "Mrs. [H.]" by a student. She stated, "I consider that an insult." Tr. 8:12–13. Although Lauer may not have intended this remark to be offensive, that is how it sounds to an objective listener. The statement has the effect of degrading Mrs. H., whose daughter was a classmate of Lauer's students.

(Secretary's Decision, June 9, 1994, p. 41). Again, the Secretary recognizes that the remark may not have been intended as offensive, but the Secretary concludes that Mrs. H. was degraded and uses it to show Lauer's

---

5. Brenda H. and Amanda also made other accusations against Lauer which were not accepted by the Secretary. Brenda H. also threatened to sue the School Board if Lauer was retained.

persistence. Again, we conclude that, while the remark was better left unsaid, it does not support the serious charge of "persistent negligence" and consequent discharge.

If there be any doubt that these remarks are the core of the Secretary's opinion, the next sentence therein makes it clear that they are, for the Secretary says "[t]hese comments demonstrate that Lauer's habit of making improper statements to students persisted." (Secretary's Decision, June 9, 1994, p. 41). We think this conclusion is unwarranted. Two remarks like those above in two years—or, in one year following a year without incident—cannot support a conclusion that one is "persistent." We recognize that "persistent negligence" can be a nebulous standard, especially because continuity can often be viewed in a number of different time frames. After careful consideration of the facts found by the Secretary, which facts Lauer does not dispute, we conclude the requisite continuity is lacking in this case and Lauer should not have been dismissed for persistent negligence.[6]

Our conclusion in no way undermines the fact that the Secretary's opinion thoroughly analyzes all the evidence offered to substantiate the four charges against Lauer. The opinion contains an in-depth analysis of those charges which are entirely based on hearsay, concludes that the burden of proof is properly placed on the School District, *see Phillis v. Board of School Directors,* 151 Pa.Commonwealth Ct. 497, 617 A.2d 830, *petition for allowance of appeal denied,* 535 Pa. 664, 634 A.2d 226 (1993), and reviews in detail the pertinent testimony of the leading critic of Mrs. Lauer—Mrs. Young, the principal.

One cannot read the record in this case and the Secretary's opinion without pausing for a moment to appreciate the picayune and unwarranted criticisms levelled against Lauer. She was, for example, criticized for permitting children on a bus trip to sing "99 bottles of beer on the wall." Another criticism was that she gave too much homework. In another case, she was criticized for being too lenient and, in another instance, for yell-

ing to maintain order. Reading the complaints which were made part of these proceedings, one wonders why there are any persons who want to be teachers.

We make these observations because, even at this point, the School District argues that we should uphold Lauer's dismissal on the grounds of incompetency, intemperance, and persistent and wilful violation of the school law. Suffice it to say that the School District, which had the burden of proof on these grounds, failed before the Secretary.

In sum, the Secretary exercised his prerogative as fact-finder and his findings cover eight remarks Lauer admittedly made. We accept those factual determinations. However, we disagree with the Secretary's conclusion that the facts in this case constitute persistent negligence under the School Code. Our Supreme Court has stated that "the Commonwealth Court clearly had the authority to decide that the facts as given to the Secretary compelled the court to reach a different legal conclusion from that reached by the Secretary." *Strinich,* 494 Pa. at 304, 431 A.2d at 271. *See also Belasco v. Board of Public Education of the School District of Pittsburgh,* 510 Pa. 504, 510 A.2d 337 (1986); *Horton.* We reach a different legal conclusion on one of the four charges in this case—persistent negligence—and therefore reverse the Secretary's decision in that regard.

### ORDER

**AND NOW,** this 31st day of March, 1995, the order of the Secretary of Education, No. 23–91, dated June 9, 1994, is hereby reversed.

---

6. We held in *Horton* that two isolated incidents in one day is not continuous and therefore fails

to meet the standard for persistence.