**Karen HERTZLER, Appellant**

v.

**WEST SHORE SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 16, 2013.
Decided Oct. 7, 2013.

Charles E. Steele, Pittsburgh, for appellant.

Philip H. Spare, York, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Karen Hertzler appeals an order of the Court of Common Pleas of Cumberland County (trial court) that upheld her three-day suspension from her position as a school principal. The West Shore School District suspended Hertzler for sharing the news with a colleague that she had been exonerated by an investigation conducted by the School District into a teacher's charge that Hertzler had harassed her. Hertzler contends that her suspen-sion was unfounded because the School District did not have a policy that required her to keep her exoneration a secret, and it did not give her a specific directive to that effect. We agree and, therefore, reverse and remand.

Hertzler is the principal at the New Cumberland Middle School, which is in the West Shore School District. On October 17, 2011, a teacher at that school (complainant) filed a complaint with the School District accusing Hertzler of harassment. On November 10, 2011, the teacher filed a second complaint accusing Hertzler of retaliation. The School District instituted an investigation. Two months later, Jemry Small, the School District Superintendent, advised Hertzler by letter that there was "insufficient evidence" to support either of the two charges. Reproduced Record at 231a (R.R. ——). The letter ended with the statement, "[t]his notification to you concludes the investigations." *Id.*

Shortly thereafter, Small called Hertzler into her office. She asked Hertzler if she had disclosed the outcome of her investigation to anyone outside her family. Hertzler responded that she had shared this news with one faculty member at the school. On January 17, 2012, Small suspended Hertzler for three days for not keeping her exoneration a secret. Small's letter of suspension explained as follows:

> On Tuesday, January 10, 2012, you met with me to discuss a breach of confidentiality regarding the findings of a harassment complaint filed against you by a staff member at New Cumberland Middle School. During the meeting the following was discussed:
>
> 1. When asked if you shared the results, you stated that you had shared the results with one staff member. Upon hearing this, I confirmed with you that you were indeed told by the

investigator, Suzanne Tabachini, that this process was indeed confidential and not to be shared.

2. I also questioned you about receiving a card from staff members who were attending a birthday celebration at New Cumberland Middle School; this card was congratulating you on being acquitted of the harassment charges. Thus confirming several staff members were aware of the findings [of] the investigation.

R.R. 235a. Small concluded that in making this disclosure, Hertzler had failed to meet expectations for professional employees set forth in the School District's Administrative Performance Plan. Those expectations include abiding by laws "governing educational and civil rights of students and others;" keeping "the highest degree of confidentiality appropriate to the position;" "competent problem analysis and resolution;" and the exercise of "prudent judgment." *Id.* Small also charged Hertzler with a violation of the Educator's Code of Conduct, which requires professional employees to keep confidential information that is obtained in confidence. Small's letter advised:

[Y]ou will be suspended without pay for a period of three (3) work days beginning Wednesday, January 18 through Friday, January 20, 2012.

R.R. 236a. Hertzler served the suspension, and she appealed the suspension. She was given a hearing by the School Board.

The School District's case was made principally by testimony from Small, who testified, first, about the investigation of Hertzler. She explained that Suzanne Tabachini, the School District's director of personnel, investigated the harassment complaint, and David Zuilkoski, an assistant superintendent, investigated the retaliation complaint. They each concluded that the evidence was insufficient to support the teacher's charges against Hertzler. Nevertheless, Small was left with "concerns," which she did not specify, that prompted her to meet with Hertzler on January 4, 2012.

Sometime later, Robert Cox, an attorney, telephoned Small and informed her that Hertzler had informed a third party of her exoneration.[1] On January 10, 2012, Small confronted Hertzler with Cox's report and asked Hertzler "if she shared the results of the investigations with a member outside of her home or residence[.]" R.R. 39a. When Hertzler confirmed the report, Small decided to suspend Hertzler for violating the investigators' instruction that the "investigation process [was] to be kept confidential." R.R. 40a. This was the first time Small disciplined any employee in the School District for a breach of confidentiality.

Small conceded in her testimony that there was no School District "guideline" or policy that prohibited the target of an internal investigation from revealing the favorable outcome of an investigation. Small also acknowledged that the fact of the School District's investigation of Hertzler was not a secret because 15 out of 36 employees at the Middle School had been interviewed in the course of the investigation and knew the identity of the complaining party and that her complaint concerned harassment. Given this widespread knowledge, Small conceded that it would have been appropriate for Hertzler to inform employees at the Middle School that the investigation was over. However,

---

1. Small did not explain whether Cox represented the complainant or the School District. Small characterized her telephone conversation as "privileged information," which suggests he represents the School District. R.R. 29a.

that disclosure had to be made without revealing the outcome of the investigation.

Small also conceded that the School District did not give complainants a guarantee of confidentiality. Nevertheless, Small believed that the complaining teacher had such a guarantee and that it was compromised by Hertzler's disclosure.

The School District's letter to Hertzler was not marked confidential. Nevertheless, Small believed that Hertzler should have had the good judgment to treat the letter from the School District as a confidential document.

Mary Ellen Urich, a teacher at the Middle School in December 2011, testified that she learned of the investigation, initially, through school gossip. Later, the complaining teacher gave her an account of her harassment complaint against Hertzler because Urich was the union representative. Urich described the school as "asunder with strife" because it was widely known that the complaining teacher had accused Hertzler of harassment. R.R. 71a. Other faculty members were worried that they would also be accused of wrongdoing and might be caught up in the controversy in some way. Urich testified that she advised Small that the case had dragged on for too long and people needed "some finality brought to these investigations[.]" R.R. 113a.

Zuilkoski, an assistant superintendent, testified about his investigation, which was to determine whether Hertzler had retaliated against the complaining teacher for filing a harassment complaint. He recalled that he read a statement to Hertzler that the School District's investigation was considered confidential. He also testified that he "made [it] clear" to the people he questioned "about the confidential nature of the process." R.R. 124a. Zuilkoski testified that Hertzler did not ask any follow-up questions about this statement on confidentiality.

Tabachini, director of personnel for the School District, testified that she told Hertzler that "this was a confidential process, that [Hertzler] should not speak with anyone about the investigation, most especially [the complaining teacher] and ... that [Hertzler] didn't want to do anything that could be construed as retaliation...." R.R. 140a. Tabachini testified that she assumed that Hertzler understood that the need for confidentiality extended to the outcome.

Hertzler was the final witness. She testified that she never received any training or directive from the School District that the fact of her exoneration was to be kept secret. The School District's letter advising her that the investigations were "concluded" was not marked confidential, and it was a practice in the School District to so mark documents that were confidential. Further, Small's letter did not instruct Hertzler to keep the outcome of the investigation a secret; rather, it stated that the investigation was over.

Hertzler explained that she understood from Tabachini and Zuilkoski that she was not to speak to the complaining teacher or other School employees about the harassment matter or to interfere in any way in the investigation while it was underway. However, she did not understand that the outcome of the investigation was to be kept confidential. In any case, the fact that she was being investigated was well known throughout the school and was a source of stress.

When she received Small's letter that the investigation was over and that the evidence of harassment was insufficient, Hertzler sent Urich a text message containing one word: "Unfounded." R.R. 169a. Hertzler shared this information with Urich because she had expressed con-

cerns to Hertzler about the impact of the investigation on school morale. Sometime later, Hertzler received a thank-you card from several faculty members with a notation inside that read "Congratulations!" R.R. 234a. Hertzler had not spoken to any of the signatories about her exoneration, and the card itself made no mention of the investigation or its outcome. No one doubts, however, that it was prompted by Hertzler's exoneration.

The School Board upheld Small's three-day suspension of Hertzler. It reasoned that Hertzler had the burden of proving her suspension was arbitrary and capricious and that she had not met this burden. The School Board found that the instruction to Hertzler to keep the investigation a "confidential process" included the outcome. It agreed with Small's claim that Hertzler's disclosure could have a chilling effect upon victims of harassment who might file complaints in the future.

Hertzler appealed, arguing that the School District's suspension was not supported by evidence but, rather, resulted from a capricious disregard of the evidence. The trial court did not take additional evidence; it decided the appeal on the basis of the School Board hearing. The trial court concluded that the directive to treat the investigation as a "confidential process" included the outcome of the investigation. The trial court noted that when Hertzler admitted her disclosure to Small, she failed to offer a mitigating reason for doing so. The trial court also found it noteworthy that Hertzler had "failed" to check with the School District before making the disclosure to Urich. For these reasons, the trial court dismissed her appeal.

■ Hertzler then appealed to this Court. On appeal,[2] she again argues that the record does not support her suspension because the School District never established by substantial evidence the existence of a policy or directive that her exoneration was to be kept a secret. It was arbitrary and capricious for the School District to conclude that she should have "known" that she was not permitted to share the fact of her exoneration, which was not part of the investigation. Rather, it was an event that occurred after the investigation was concluded.

■ The Public School Code of 1949[3] governs the hiring and discipline of school district professional employees, including superintendents, teachers and principals. To dismiss a principal before completion of

2. The Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702, establishes a statutory procedure for review of the termination or demotion of tenured professional employees. *See* Section 1151 of the Public School Code, 24 P.S. § 11–1151 ·and Section 1127 of the Public School Code, 24 P.S. § 11–1127. The statutory procedure provides for a hearing before the School Board followed by an appeal to the Secretary of Education. However, discipline of professional employees that involves a sanction other than a demotion or termination is handled differently. In *Rike v. Secretary of Education,* 508 Pa. 190, 494 A.2d 1388 (1985), the Pennsylvania Supreme Court held that appeals of professional employee discipline that do not involve demotion or termination are reviewed by a court of common pleas in accordance with Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b). *Rike,* 508 Pa. at 194, 494 A.2d at 1390.

Where a complete record is made by the school board and the trial court takes no additional evidence, we affirm the school board's action unless constitutional rights were violated, an abuse of discretion occurred, an error of law was committed, or the necessary factual findings are not supported by substantial evidence of record. *Bonatesta v. Northern Cambria School District,* 48 A.3d 552, 557–58 n. 9 (Pa.Cmwlth.2012).

3. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

her contract, the school district has the burden to show that it has serious grounds for such action, as determined by Section 1122(a), such as immorality, felony convictions and willful violation of school laws and school board policy.[4] *See, e.g., McFerren v. Farrell Area School District*, 993 A.2d 344 (Pa.Cmwlth.2010). However, the Public School Code is silent on the standards by which a school board may discipline a school principal by means other than dismissal.

Section 1124 of the Public School Code provides for the suspension of professional employees.[5] In *Kaplan v. School District of Philadelphia*, 388 Pa. 213, 217, 130 A.2d 672, 675 (1957), our Supreme Court held that Section 1124 does not address disciplinary or "for cause" suspensions; rather, Section 1124 governs those suspensions done for financial or reorganizational reasons. Nevertheless, the Supreme Court held that a school district has authority to impose disciplinary suspensions; such au-

---

**4.** Section 1122(a) states, in relevant part, as follows:

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employe's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employe's teaching performance is rated as unsatisfactory; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties; physical or mental disability as documented by competent medical evidence, which after reasonable accommodation of such disability as required by law substantially interferes with the employe's ability to perform the essential functions of his employment; advocation of or participating in un-American or subversive doctrines; conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and wilful violation of or failure to comply with school laws of this Commonwealth (including official directives and established policy of the board of directors); on the part of the professional employe [.]

24 P.S. § 11–1122(a).

**5.** Section 1124 states, as follows:

(a) Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) substantial decrease in pupil enrollment in the school district;

(2) curtailment or alteration of the educational program on recommendation of the superintendent and on concurrence by the board of school directors, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes; or

(4) when new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

(b) Notwithstanding an existing or future provision in a collective bargaining agreement or other similar employment contract to the contrary, suspension of a professional employe due to the curtailment or alteration of the educational program as set forth in subsection (a)(2) may be effectuated without the approval of the curtailment or alteration of the educational program by the Department of Education, provided that, where an educational program is altered or curtailed as set forth in subsection (a)(2), the school district shall notify the Department of Education of the actions taken pursuant to subsection (a)(2). The Department of Education shall post all notifications received from a school district pursuant to this subsection on the Department of Education's publicly accessible Internet website.

24 P.S. § 11–1124.

thority is inherent in the school district's power to hire professional employees under Section 1106 of the Public School Code.[6] As the Supreme Court later observed, "[t]he power to regulate conduct, of course, would be illusory absent a concomitant power to enforce rules through the imposition of some form of discipline." *Rike v. Secretary of Education*, 508 Pa. 190, 195, 494 A.2d 1388, 1391 (1985) (quoting *Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 545, 462 A.2d 629, 635 (1983)).

 The disciplinary suspension at issue in this case involves Hertzler's alleged violation of school policy, *i.e.*, the Administrative Performance Plan and the Educator's Code of Conduct, and a directive regarding her conduct during an investigation. In *McFerren*, 993 A.2d 344, 357, this Court explained that where a school district policy serves as the basis for a disciplinary termination, the school district "must show that the employee knew of the school district's policy in question" and chose not to comply. A principal may also be disciplined for negligent performance of a specific duty; however, "the negligent

performance must be serious, not picayune." *Id.* at 358.

 The School Board found that Hertzler was "on notice that she must not divulge anything whatsoever about the investigation, including its results." School Board Adjudication, Conclusion of Law No. 6; R.R. 242a. The School Board also found that the disclosure demonstrated poor judgment in violation of the Administrative Performance Plan. It also found that Hertzler's disclosure violated the Educator's Code of Conduct, which required Hertzler "to keep in confidence *information obtained in confidence* unless required to be disclosed by law or by clear and compelling professional necessity as determined by the educator." School Board Adjudication, Conclusion of Law No. 10; R.R. 242a (emphasis added). Although presented as legal conclusions, factual findings are embedded in them. Hertzler challenges those factual findings.[7]

The relevant evidence consists of Tabachini's statement that "this was a confidential process" and Zuilkoski's statement that the investigation was "confidential" and that everyone questioned was told "about the confidential nature of the pro-

---

**6.** Section 1106 states, as follows:

*The board of school directors in every school district shall employ the necessary qualified professional employes, substitutes and temporary professional employes to keep the public schools open in their respective districts* in compliance with the provisions of this act. Except for school districts of the first class and first class A which may require residency requirements for other than professional employes, substitutes and temporary professional employes, no other school district shall require an employe to reside within the school district as a condition for appointment or continued employment.

24 P.S. § 11–1106 (emphasis added).

**7.** Substantial evidence is evidence that a reasonable mind could accept as sufficient to support a conclusion. *Bonatesta*, 48 A.3d at

558. When analyzing the evidence, we must consider the evidence in the light most favorable to the party that was successful before the finder of fact. *Id.* The school board assesses the credibility of the witnesses, but we will "overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Id.* (quoting *Agostino v. Township of Collier*, 968 A.2d 258, 263–64 (Pa. Cmwlth.2009)). A capricious disregard of the evidence is established "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Bonatesta*, 48 A.3d at 558 (quoting *Agostino*, 968 A.2d at 264).

cess." R.R. 140a, 124a. Tabachini and Zuilkoski explained to Hertzler that confidentiality was necessary to ensure the quality of their investigation. They were particularly concerned that conversations between Hertzler and potential witnesses could interfere with the truthfulness of the witness statements. This was why Zuilkoski told all those he interviewed not to discuss the statements they gave the investigators.

First, there is no evidence that Hertzler violated this confidentiality directive. She did not disclose the name of the complainant; discuss the nature and scope of the investigation with Urich; or question witnesses about what they told the investigators at any time, either before or after the conclusion of the investigation. There is no evidence that Hertzler said or did anything to influence or undermine the investigation.

Second, there is no evidence that Hertzler was "on notice" that she could not divulge the "results" of the investigation. The directives from Tabachini and Zuilkoski related to the conduct of the investigation. They told Hertzler not to discuss the investigation with anyone, lest she influence witnesses. That concern disappeared once the investigation was over. In short, the rationale for confidentiality proffered by Tabachini and Zuilkoski evidenced their understanding that the confidentiality directive applied while the investigation was on-going but not after it was over.

It is noteworthy that Small asked Hertzler whether she "shared the results of the investigations with a member outside of her home or residence." R.R. 39a. Small believed, apparently, that Hertzler could disclose her exoneration to family members. Small also allowed that Hertzler could report to school employees that the investigation was over, to relieve employee anxiety. These exceptions are as vague as the so-called rule against Hertzler disclosing her exoneration.

In any case, the exceptions conceded by the School District do not make sense. First, Hertzler's family members could have shared the news with others even if told by Hertzler not to. Their speech would be beyond School District control. Second, if Hertzler had announced to School employees that the investigation was over, but did not tell them there would be no hearing, it would not relieve the stress and morale problem. Employees would still be left wondering whether a hearing would occur and whether they would be called as witnesses or drawn into the matter in some other way. In any case, it is unlikely that employees would settle for an incomplete explanation. If Hertzler announced that the investigation was over with a broad smile on her face, would this violate the so-called confidentiality rule?

Contrary to the School Board's finding, Hertzler was not "on notice" to keep her exoneration a secret. Nothing was so stated in a general policy of the School District. The School District relied upon the Administrative Performance Plan, which articulates a need for good judgment, protecting confidential information and exercising competency. These general standards in no way articulate a standard about what may be said about the outcome of investigation, and they do not restrict what the target of an investigation may say. The Educator's Code of Conduct is likewise unavailing. It extends a principal's confidentiality obligation to that "information obtained in confidence." Hertzler did not obtain the news of her exoneration in confidence. The School District notified Hertzler of her exoneration in a letter addressed to her, which was not marked confidential.

The School District had the burden of proving that it had just cause to suspend Hertzler. *McFerren*, 993 A.2d at 357 ("[T]he [school] district must show that the employee knew of the school district's policy in question and deliberately chose not to comply."). *See also Borough of Bedford v. Department of Environmental Protection*, 972 A.2d 53, 61 (Pa.Cmwlth.2009) ("It is always the agency's burden to convince the tribunal that its interpretation of [the policy] it seeks to enforce is correct[.]"). Contrary to the School Board's belief, it was not Hertzler's burden to prove that the superintendent acted arbitrarily. Nor was it Hertzler's burden to offer mitigating reasons for her disclosure, as suggested by the trial court. The burden belonged to the School District to prove the existence of a policy or specific directive that a person exonerated by an internal investigation must keep the exoneration a secret.[8] It then had to prove a violation of this policy or directive. The School District did not shoulder this burden.

The School District did not direct Hertzler to keep her exoneration a secret, and it has never instructed her, in general, that targets of investigations must keep the outcome of an investigation a secret. There is no reason that Hertzler should have known that by texting the single word "unfounded" to Urich she violated a School District directive relating to her conduct during the investigation. The School District told her that the investigation was concluded.

For these reasons, the order of the trial court is reversed and the disciplinary suspension is vacated. The matter is remanded to the trial court to remand to the School Board in order to award Hertzler back pay, and any other benefits lost, due to the period of the suspension.

## ORDER

AND NOW, this 7th day of October, 2013, the order of the Court of Common Pleas of Cumberland County is hereby REVERSED and the disciplinary suspension VACATED. The matter is REMANDED to the trial court to remand to the West Shore School District Board of School Directors in accordance with the attached opinion.

Jurisdiction relinquished.

---

8. There is no evidence of a School District policy, or directive, that a person subjected to an internal investigation may not share the fact of his or her exoneration. However, such a policy, had it been adopted, is problematic. It creates a preference for complainants and gives no weight to the reputation of the person subjected to the internal investigation. It tilts the balance in favor of frivolous complaints. In any case, Small's stated concern that revealing the outcome of an exoneration might discourage future complaints was purely speculative. The School District presented no evidence to support this concern.